IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRESA JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, | ) Case No. CIV-22-432-SM |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Tresa James (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 13, 14.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge (ALJ) erred at Step Five when he imposed "frequent supervision to ensure assigned task completion." Doc. 15, at 3-12. After a careful review of

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

the AR, the parties' briefs, and the relevant authority, the Court agrees with Plaintiff, as it cannot determine whether frequent supervision is an additional requirement of a supervisor or a limitation on Plaintiff. So the Court reverses and remands for further administrative proceedings. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C. Relevant findings.**

**1. Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 19-32; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since January 22, 2020, the alleged onset date;

(2) had the severe medically determinable impairments of depressive, bipolar, and related disorders; anxiety and obsessive compulsive disorder; hypertension; asthma; esophageal spasms; dysphagia; diverticulitis; and irritable bowel syndrome;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] (RFC) to perform medium work with the following limitations: "she is limited to work that is of SVP level of 2 or less"; she can understand, remember, and carry out ordinary and/or routine written or oral instructions and tasks and to set realistic goals and

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

> plans independently of others; she can respond appropriately to supervisors, co-workers, work situations, and the public*; she requires frequent supervision to ensure assigned task completion*";

(5) was unable to perform any past relevant work;

(6) could perform jobs that exist in significant numbers in the national economy, such as kitchen helper; hospital cleaner; and cook helper; and so,

(7) had not been under a disability from January 22, 2020, through January 12, 2022.

*See* AR 17-29 (emphasis added).

### 2. Appeals Council's findings.

The Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

The Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (internal quotation marks omitted).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (internal quotation marks omitted). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf.*

*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

> **B.    Plaintiff challenges the ALJ's requirement of "frequent supervision to ensure assigned task completion."[3]**

The ALJ concluded that the state agency physicians' opinions on Plaintiff's ability to perform medium work were partially persuasive. AR 25. As to her non-exertional limitations,

> [a]t the initial level, Edith King, Ph.D., opined the claimant's problems are moderate in severity by report of the claimant, but she was still functional on a daily basis (1A). At the reconsideration level, Mary Rolison, Ph.D., opined the claimant is able to perform simple and some detailed tasks with routine supervision, she can interact appropriately with coworkers and supervisors for incidental work purposes, but should avoid all contact with the public, and can adapt to a routine work setting (3A*). I find their opinions only partially persuasive. Dr. King did not provide any functional limitations in vocationally relevant terms, and based her opinions primarily on the claimant's subjective report of symptoms (1A/15). She did not reference any objective medical findings in support of her opinions, and her opinions are not consistent with the record as a whole. Similarly, Dr. Rolison did not provide any objective medical support for her opinion regarding marked limitations in social functioning, particularly with interacting with the public. Her opinion regarding this limitation is inconsistent with the claimant's own testimony that she goes out to eat three times per month, goes grocery shopping, and visits with family monthly. Her opinions are also inconsistent with the claimant's treatment records.* Although her treatment records show conflict between the claimant and her husband, *the claimant did not report any conflict with members of the public to her treating providers.* Overall, I find the objective medical evidence supports limiting the

---

[3]    Doc. 15, at 3-4 (quoting AR 25).

6

> claimant to work that is of SVP level of 2 or less as defined in the DOT. She can understand, remember, and carry out ordinary and/or routine written or oral instructions and tasks and to set realistic goals and plans independently of others. *The claimant can respond appropriately to supervisors, co-workers, work situations, and the public. She requires frequent supervision to ensure assigned task completion.*

AR 26 (emphasis added).

The ALJ included the limitation that Plaintiff "require[s] frequent supervision to ensure assigned task completion" in his hypothetical to the vocational expert. *Id.* at 51. The vocational expert identified caretaker, kitchen helper, and hospital cleaner as jobs that would satisfy the hypothetical. *Id.* at 52. The ALJ followed up asking "as far as supervision on these jobs as required, that would fall within the hypothetical given, frequent supervision?" *Id.* at 53. To which the vocational expert refined the jobs Plaintiff could perform. She deleted caretaker from the list and substituted cook helper as an alternate. She noted that each of the three jobs she identified had the "overseeing person in the same vicinity." *Id.*

Plaintiff argues that the limitation of "frequent supervision" poses more supervision than Step 5 contemplates. Doc. 15, at 5-6. Frequent means more than one-third and up to two-thirds of the time. SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983). And the Court agrees that although the vocational expert noted the overseeing person would be "in the same vicinity" for each of the identified

7

jobs, that does not end the inquiry. The ALJ followed up emphasizing "frequent supervision." AR 53. Plaintiff argues the ALJ should have also asked whether an employer would permit a supervisor to spend up to two-thirds of the workday ensuring that Plaintiff had completed her tasks. Doc. 15, at 6-7.

The Court cannot discern if the "frequent supervision" requirement means supervision as an addition to or as a limitation on the amount of supervision generally required. As Plaintiff points out, the latter interpretation might make sense had the ALJ also limited Plaintiff's interaction with supervisors, coworkers, and/or the public. *Id.* at 10. But the ALJ found Plaintiff could respond appropriately to and interact with these groups. AR 20.

The Commissioner's only argument appears to be that Plaintiff's counsel should have followed up with additional questions, and that Plaintiff loses under the deferential standard of review. Doc. 20, at 9-10. She argues the frequent supervision restriction can be easily harmonized, but does not respond to Plaintiff's arguments that the ALJ's frequent supervision might be an addition to the RFC rather than just a limitation. While it is clear the ALJ rejected parts of Dr. Rolison's opinion, notably her limitation on Plaintiff's interactions with the general public, AR 26, the Commissioner offers no place in the record on which the ALJ relied to formulate the "frequent supervision"

requirement. Doc. 20, at 9-10; *see e.g., Jones v. Kijakazi*, No. CIV-20-746-SLP, 2022 WL 2531809, at *3 (W.D. Okla. July 7, 2022) (remanding for lack of substantial evidence to support Plaintiff's RFC, noting "[t]he ALJ did not pick a middle ground, rather he chose what appears to be an arbitrary set of limitations").

And the Commissioner neglects to even cite the persuasive authority on which Plaintiff relies—*Carnes v. Kijakazi*, No. CIV-21-1196-P, 2022 WL 4991147 (W.D. Okla. Oct. 4, 2022). There, Judge Purcell encountered a similar restriction, but one only requiring "occasional oversight to ensure task completion." *Id.* at *3. But, as here, the *Carnes* ALJ's RFC requirement could have meant either "supervision as an addition to or limitation on the amount of supervision generally required." *Id.* There, as here, the vocational expert's testimony does not provide substantial support for the ALJ's decision because it is unclear whether the ALJ intended the enhanced supervision "to mean a limitation on or an addition to a supervisor's general responsibility." *Id.* at *4; AR 51-53. If the ALJ intended the frequent supervision to mean Plaintiff's supervisor would provide additional supervision, it appears the vocational expert may not have understood the hypothetical in that way. Thus, Plaintiff may be unable to perform the jobs the vocational expert identified. *See Carnes*, 2022 WL 4991147, at *4; *see also Culbertson v. Colvin*, 2015 WL 1041117, at

*6 (D. Colo. March 6, 2015) (reversing where RFC required "supervision on a somewhat consistent basis" and vocational expert identified jobs that provided "only occasional supervision").

### III. Conclusion.

Based on the above, the Court reverses and remands the Commissioner's decision for further proceedings.

**ENTERED** this 25th day of January, 2023.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE